_____UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS NARDI,                    :     CIVIL NO. **3:04-CV-0649**
                                 :
            Petitioner           :     (Judge Conaboy)
                                 :
        v.                       :     (Magistrate Judge Smyser)
                                 :
WILLIAM S. STICKMAN, III,        :
                                 :
            Respondent           :


_____REPORT AND RECOMMENDATION


     On March 26, 2004, the petitioner, a state prisoner
proceeding *pro se*, filed a petition for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254.  By an Order dated April 1, 2004,
we gave the petitioner the notice required by *Mason v. Meyers*,
208 F.3d 414 (3d Cir. 2000), and ordered the petitioner to
inform the court on or before April 15, 2004 whether he wants
(1) to have his petition ruled upon as filed; (2) if his
pleading is not styled as a § 2254 petition, to have his
pleading recharacterized as a § 2254 petition and heard as such,
but lose his ability to file a second or successive petition
absent certification by the court of appeals as required by 28
U.S.C. § 2244(b); or (3) to withdraw his petition and file one
all-inclusive petition within the one-year statutory period

prescribed by 28 U.S.C. § 2244(d).  The petitioner was advised that if he failed to inform the court which option he chooses, the court would rule on the petition as captioned.   The petitioner did not file a response to our Order of April 1, 2004.   Thus, by an Order dated April 23, 2004, we indicated that the petition will be ruled upon as a 28 U.S.C. § 2254 petition.

The respondent was ordered to respond to the petition on or before May 17, 2004.  After requesting and receiving an extension of time, the respondent filed a response to the petition on June 2, 2004.  The petitioner filed a reply on June 29, 2004.

By an Order dated July 6, 2004, we ordered the parties to file supplemental briefs addressing the question whether the one-year statute of limitations found in 28 U.S.C. § 2244(d) has expired.  The parties filed their supplemental briefs.  The respondent contends that the petition is barred by the statute of limitations.  The petitioner contends otherwise.

2

In order to determine if the instant petition is barred by the stature of limitations, we must examine the procedural history of the petitioner's criminal case and the petitioner's attempts to obtain collateral review of his conviction.

On September 19, 1995, the petitioner was convicted in the Court of Common Pleas of Wayne County, Pennsylvania of sexual abuse of children by pornography, sexual abuse of children by photographing or filming sexual acts and corruption of minors. *See Commonwealth v. Nardi*, No. 2523 Philadelphia 1998, slip op. at 1 (Pa.Super.Ct. Aug. 18, 1999).  On October 26, 1995 the petitioner was sentenced to a term of imprisonment of six to twelve years. *Id.*

On October 31, 1995, the petitioner filed a *pro se* petition for post conviction relief and another such petition on November 6, 1995. *Id.*  Following a hearing, on May 26, 1996, the trial court filed an opinion denying the petitioner's post-sentence motions. *Id.* at 2.  The petitioner filed an appeal of that order to the Pennsylvania Superior Court. *Id.*  The Superior Court affirmed the petitioner's judgment of sentence on February 21, 1997. *Id.*  The Pennsylvania Supreme Court denied the

3

petitioner's petition for leave to file an appeal *nunc pro tunc* on October 7, 1997. *Id.*

On December 30, 1997, the petitioner filed in this court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 - *Nardi v. Dufrain*, 3:97-CV-01961 (M.D.Pa.). By a Report and Recommendation dated April 24, 1998, the undersigned recommended that the petition be dismissed. By an Order dated November 17, 1998, that petition was dismissed without prejudice based on the petitioner's failure to exhaust state court remedies.

While his federal habeas petition was still pending (but after the undersigned issued a Report recommending that it be dismissed), on May 8, 1998, the petitioner filed a petition pursuant to the Post Conviction Relief Act (PCRA) with the trial court. *See Commonwealth v. Nardi*, No. 2523 Philadelphia 1998, slip op. at 2 (Pa.Super.Ct. Aug. 18, 1999). Characterizing the petitioner's PCRA petition as his second, the PCRA court dismissed the petition on July 14, 1998. *Id.* The petitioner filed an appeal with the Pennsylvania Superior Court. *Id.* By a Memorandum and Order dated August 18, 1999, the Superior Court

4

vacated the PCRA court's order dismissing the petition and

remanded the case to the PCRA court to appoint counsel to

represent the petitioner. *Id.* at 6.  Although the petition

appeared untimely on its face, the Superior Court reasoned:

> Instantly, the PCRA Court and the Commonwealth
> are treating Appellant's present appeal as an appeal
> from his **second** PCRA petition.  However, in light of
> our careful review of the record and in the interests
> of justice, we believe that this is an appeal from
> Appellant's **first** PCRA petition.  We conclude this
> based on the following.  Appellant filed a *pro se*
> motion on October 31, 1995, just five (5) days
> following his judgment of sentence, and then filed a
> supplemental motion six (6) days later, entitling them
> both as PCRA petitions.  However the October 31st
> motion had subparts entitled, "Motion to Vacate or
> Modify Sentence" and "Motion for Arrest of Judgement
> [sic]."  These motions, particularly the first motion,
> were in actuality post-sentence motions and should
> have been filed pursuant to Pa.R.Crim.P. 1410.
> Because Appellant alleged in his *pro se* motions that
> trial counsel prejudiced him and that the sentencing
> court erred, the Trial Court removed trial counsel and
> appointed Appellant new counsel on November 6, 1995.
> The Trial Court conducted a hearing on Appellant's
> motions on April 25, 1996 at which time previous trial
> counsel and Appellant testified.  The Trial Court held
> its decision on the matter until May 20, 1996 when it
> denied and dismissed Appellant's **post-sentence
> motions**.  This Court affirmed Appellant's judgment of
> sentence, with an order similar to that used in the
> affirmance of any judgment of sentence, but also
> stated in its memorandum opinion that Appellant was
> appealing from an order denying PCRA relief.
>
> Given the confusing and convoluted nature of the
> procedural quagmire of this matter, coupled with the
> improper use of the traditional nomenclature of
> documents and the hybrid procedures and hearings

> conducted, we do not believe that in the interests of
> justice a *pro se* Appellant must forsake what may be
> his *only* chance for a properly counseled PCRA
> petition.  Accordingly, as Appellant's indigent status
> has been confirmed already, we are compelled to remand
> this matter to the PCRA Court for the appointment of
> counsel to represent Appellant on this his *first* PCRA
> petition.  ***See Commonwealth v. Walker,*** *supra.*

*Id.* at 4-5 (footnote omitted).

The PCRA court subsequently denied the petitioner's PCRA
petition on August 2, 2001. *See Commonwealth v. Nardi*, No. 2338
EDA 2002, slip op. at 3 (Pa.Super.Ct. April, 10, 2003).  The
petitioner appealed that denial to the Pennsylvania Superior
Court. *Id.*

On June 19, 2002, while the appeal of the denial of his
"first" PCRA petition was still pending, the petitioner filed
another PCRA petition. *See Commonwealth v. Nardi,* No. 151-
Criminal-1995, slip op. at 1 (C.C.P. Wayne County June 27,
2002).  By an Order dated June 27, 2002, the PCRA court
dismissed this subsequent PCRA petition. *Id.* at 2.  The
petitioner filed an appeal to the Pennsylvania Superior Court of
that dismissal. *See Commonwealth v. Nardi*, No. 2338 EDA 2002,
slip op. at 4 (Pa.Super.Ct. April, 10, 2003).

By a Memorandum and Order dated April 10, 2003, the
Pennsylvania Superior Court affirmed the denial of the
petitioner's "first" PCRA petition and affirmed the dismissal of
his subsequent PCRA petition. *See Commonwealth v. Nardi*, No.
2338 EDA 2002, slip op. at 4-5 (Pa.Super.Ct. April, 10, 2003).
Again, the Superior Court noted the uncertainty of the
procedural history in the case:

> As to appellant's first PCRA petition, we are
> unable to determine whether it was timely or not.  If
> the Supreme Court's order *denying nunc pro tunc*
> relief, dated October 7, 1997 was denial of allocatur
> following this Court's affirming judgment of sentence,
> it would have been a final order for the purpose of
> calculating the timeliness of a PCRA petition, and the
> petition would have been timely filed.  If the Supreme
> Court order was a different kind of order, then the
> final order, from which appellant had one year to file
> for PCRA relief, was this Court's affirmance of
> judgment and sentence dated February 21, 1997.
> Appellant, who filed his petition on April 28, 1998,
> would therefore be more than two months late. 42
> Pa.C.S.A. § 9545(b)(1); ***Commonwealth v. Alcorn***, 703
> A.2d 1054 (Pa.Super. 1997).
>
> We find it unnecessary to make this
> determination, because the petition fails on other
> grounds.  Appellant's brief is virtually impossible to
> comprehend, and there is no coherent development of a
> legal argument.  Appellant's brief to this Court does
> not even minimally conform to Pa.R.A.P. 2111. We
> therefore dismiss the appeal. ***Commonwealth v. Miller***,
> 721 A.2d 1121 (Pa.Super. 1998).
>
> We affirm the order denying collateral relief.

7

*Id.* at 4-5 (footnote omitted).  In a footnote, the Superior

Court stated:

> Appellant's second petition could not be
> addressed by the PCRA court because it had no
> jurisdiction to do so while the first petition was on
> appeal. ***Commonwealth v. Lark***, 560 Pa. 487, 746 A.2d
> 585 (2000).  It is, of course, also well beyond the
> one-year deadline for filing.  We take note that this
> Court's Central Legal Staff directed appellant to show
> cause why his appeal should not be quashed as
> untimely.  We conclude that the second PCRA is
> untimely, and we therefore affirm the order of
> dismissal.

*Id.* at 4 n.3.


On February 23, 2004, the Pennsylvania Supreme Court denied

the petitioner's Petition for Allowance of Appeal. *Commonwealth*

*v. Nardi*, 844 A.2d 552 (Pa. 2004)(table).


28 U.S.C. § 2244(d) provides:

> (d)(1) A 1-year period of limitation shall apply
> to an application for a writ of habeas corpus by a
> person in custody pursuant to the judgment of a State
> court.  The limitation period shall run from the
> latest of-
> (A) the date on which the judgment became final
> by the conclusion of direct review or the expiration
> of the time for seeking such review;
> (B) the date on which the impediment to filing an
> application created by State action in violation of
> the Constitution or laws of the United States is

removed, if the applicant was prevented from filing by
such State action;
        (C) the date on which the constitutional right
asserted was initially recognized by the Supreme
Court, if the right has been newly recognized by the
Supreme Court and made retroactively applicable to
cases on collateral review; or
        (D) the date on which the factual predicate of
the claim or claims presented could have been
discovered through the exercise of due diligence.
        (2) The time during which a properly filed
application for State post-conviction or other
collateral review with respect to the pertinent
judgment or claim is pending shall not be counted
toward any period of limitation under this subsection.


We first must determine when the petitioner's conviction

became final within the meaning of 28 U.S.C. § 2244(d)(1)(A).

In most cases, determining when a conviction became final is a

straightforward matter.  However, in this case, given the labels

the petitioner attached to his filings and the Pennsylvania

Superior Court's treatment of his petitions, determining when

the petitioner's conviction became final is difficult.


The petitioner contends that he did not file a direct

appeal.  If the filings of the petitioner on October 31, 1995

and November 6, 1995 are treated as petitions for collateral

relief (rather than post-sentence motions), then the

petitioner's sentence became final on November 25, 1995.  The

9

petitioner was sentenced on October 26, 1995.  He had 30 days from that date to file a direct appeal to the Pennsylvania Superior Court.  Assuming that he did not file a direct appeal, his conviction became final on November 25, 1995.

On the other hand, if, as the Pennsylvania Superior Court did in its Memorandum and Order of August 18, 1999, we treat the filings of the petitioner on October 31, 1995 and November 6, 1995 as post-sentence motions (rather than petitions for collateral relief) and the appeal of the denial of those motions are treated as a direct appeal, then the petitioner's conviction became final on March 22, 1997.  The Pennsylvania Superior Court affirmed the petitioner's conviction and sentence on February 21, 1997.   The petitioner had thirty days to appeal to the Pennsylvania Supreme Court.  The petitioner did not file a timely appeal to the Pennsylvania Supreme Court.  Therefore, the petitioner's conviction became final on March 22, 1997.

Pursuant to 28 U.S.C. § 2244(d)(2), the statute of limitations is tolled during that time during which a properly filed application for state post-conviction or other collateral

review with respect to the pertinent judgment or claim is pending.

Although it is unclear whether the petitioner's conviction became final on November 25, 1995 or March 22, 1997, that determination is not necessary in the instant case.  Assuming arguendo that the petitioner did not file a direct appeal and therefore his conviction became final on November 25, 1995, the statute of limitations was nevertheless tolled until March 22, 1997.  That is so because if the petitioner did not file a direct appeal, then the filings of the petitioner on October 31, 1995 and November 6, 1995 are treated as motions for collateral relief and the statute of limitations is tolled during the time those motions were pending.

The statute of limitations began to run (if there was a direct appeal) or the period of tolling of the statute ended (if there was no direct appeal) on March 22, 1997.  Absent further tolling the statute expired one year later on March 21, 1998.[1]

_____

[1] We note that the petitioner contends that his court-appointed attorney provided ineffective assistance of counsel by not filing a direct appeal, and that 28 U.S.C. § 2244(d)(1)(b) is the applicable provision regarding the start of the limitations period.  As set forth above, § 2244(d)(1)(b) provides that the

The petitioner contends that the statute was tolled during

limitation period runs from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the Untied States is removed, if the applicant was prevented from filing by such State action."  The petitioner does not explain how his trial counsel's failure to file a direct appeal in 1996 prevented him from filing a federal habeas petition sooner than he did.  Therefore, we conclude that § 2244(d)(1)(B) is not applicable.

We also note that one of the petitioner's claims is that his trial counsel had a preexisting adversarial lawyer/client relationship with the foreman of the petitioner's jury and that his trial counsel failed to disclose that relationship.  The petitioner states that he became aware of this information sometime after trial and asked his appeals counsel, Lee Krause, to investigate.  The petitioner contends that the limitation period began pursuant to 28 U.S.C. § 2244(d)(2)(D).  Pursuant to § 2244(d)(2)(D), the limitations period begins to run on the date on "which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  It is not clear on what date the petitioner actually became aware of his trial counsel's relationship with the jury foreman or could have through due diligence become aware of that relationship.  However, by the plaintiff's own statement he actually did become aware of that relationship at the latest during the time that he was represented by Lee Krause.  According to the docket sheet from the petitioner's criminal case, Lee Krause was appointed to represent the petitioner on November 8, 1995.  Although the docket is not clear on the date that Lee Krause ended his representation of petitioner, it appears that at the latest Krause's representation of the petitioner ended on March 14, 1997.  *See* Do. 12, Exhibit P (March 14, 1997 letter by the petitioner to Clerk of Supreme Court).  Thus, providing the petitioner with every assumption favorable to his position, at the latest the petitioner learned of his trial counsel's alleged adversarial relationship with the jury foreman on March 14, 1997. If March 14, 1997 is the starting date of the running of the statute of limitations pursuant to 28 U.S.C. § 2244(d)(1)(D), the instant petition is untimely.  Assuming that the statute of limitations began to run on March 14, 1997, as discussed before the limitations period was nevertheless tolled until March 22, 1997.  Absent further tolling, the statute expired one year later on March 21, 1998.

12

the time that his prior federal petition for a writ of habeas
corpus was pending (from December 30, 1997 until November 17,
1998).   If the statute of limitations was tolled during the
time the petitioner's prior federal habeas petition was pending
then the instant petition may be timely.

If the prior federal petition tolled the statute, then the
statute ran for a period of 283 days from March 22, 1997 (30
days after the Pennsylvania Superior Court denied his appeal)
until December 30, 1997 (the date he filed his prior federal
habeas petition).  If the prior federal petition tolled the
statute, then, assuming that the petitioner's PCRA petition of
May 8, 1998 was properly filed within the meaning of
§ 2244(d)(2), the statute did not begin to run again until
February 23, 2004 , the date on which the Pennsylvania Supreme
Court denied the petition for allowance of appeal from the
denial of the PCRA petition.   The statute then ran for a period
of 29 days from February 23, 2004 until March 26, 2004 (the date
the petitioner filed the instant petition).  We add those 29
days to the previous 283 days that the statute had run to equal
312 days, which is less than a year.  Thus, if the previous

federal petition tolled the statute of limitations, the instant petition may be timely.

By an order dated October 16, 2004, we appointed counsel to represent the petitioner for the limited purpose of addressing the issues: 1) whether the petitioner's PCRA petition of May 8, 1998 was properly filed within the meaning of § 2244(d)(2), and 2) if so, whether the petitioner is entitled to equitable tolling of the statute of limitations for the time period his prior federal habeas petition was pending in this court.  The parties were ordered to file supplemental briefs on the above issues.  Supplemental briefing is now complete.

We conclude that because the Pennsylvania Superior Court did not dismiss the petitioner's PCRA petition of May 8, 1998 as untimely, that petition was properly filed within the meaning of § 2244(d)(2).

"An application is "filed," as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).  "And an

application is "*properly* filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Id.* "These usually prescribe, for example, the form of the document, the time limits upon it delivery, the court and office in which it must be lodged, and the requisite filing fee." *Id.* (footnote omitted). "But in common usage, the question whether an application has been "properly filed" is quite separate from the question whether the claims *contained in the application* are meritorious and free of procedural bar." *Id.*

In the instant case, the Pennsylvania Superior Court in its Memorandum and Order of April 10, 2003, stated that it was unable to determine whether the petitioner's May 8, 1998 PCRA petition was timely or not. However, the Superior Court went on to dismiss the appeal of the denial of that petition for failure of the petitioner to coherently develop a legal argument. Since the Superior Court did not treat the May 8, 1998 petition as untimely, this court should also not treat that petition as untimely. Accordingly, we conclude that the May 8, 1998 PCRA petition was properly filed within the meaning of § 2244(d)(2) and that the statute of limitations was tolled during the time that that petition was pending, i.e. from May 8, 1998 to

15

February 23, 2004.   However, even though the statute of
limitations was tolled from May 8, 1998 to February 23, 2004,
the instant habeas petition was not timely filed unless the
statute of limitations was also tolled during the time that the
petitioner's prior federal habeas petition was pending.

"A petitioner can seek tolling in two ways: (i) statutory
tolling under § 2244(d)(2), or (ii) equitable tolling." *Jones v.
Morton*, 195 F.3d 153, 158 (3d Cir. 1999).

In *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001), the
United States Supreme Court held that a federal habeas corpus
petition is not an "application for State post-conviction or
other collateral review" within the meaning of 28 U.S.C.
§ 2244(d)(2) and thus § 2244(d)(2) does not toll the limitation
period during the pendency of a federal habeas petition.
Although the holding in *Duncan* was based on an interpretation of
the language of § 2244(d)(2), the Court in *Duncan* also addressed
the effect an opposite interpretation would have.   The Court
reasoned:

> The tolling provision of § 2244(d)(2)
> balances the interests served by the exhaustion
> requirement and the limitation period. Section

16

2244(d)(2) promotes the exhaustion of state
remedies by protecting a state prisoner's
ability later to apply for federal habeas relief
while state remedies are being pursued.  At the
same time, the provision limits the harm to the
interest in finality by according tolling effect
only to "properly filed application[s] for State
post-conviction or other collateral review."

By tolling the limitation period for the
pursuit of state remedies and not during the
pendency of applications for federal review,
2244(d)(2) provides a powerful incentive for
litigants to exhaust all available state
remedies before proceeding in the lower federal
courts.  But if the statute were construed so as
to give applications for federal review the same
tolling effect as applications for state
collateral review, then § 2244(d)(2) would
furnish little incentive for individuals to seek
relief from the state courts before filing
federal habeas petitions.  The tolling provision
instead would be indifferent between state and
federal filings.  While other statutory
provisions, such as § 2254(b) itself, of course,
would still provide individuals with good reason
to exhaust, § 2244(d)(2) would be out of step
with this design.  At the same time,
respondent's interpretation would further
undermine the interest in finality by creating
more potential for delay in the adjudication of
federal law claims.

A diminution of statutory incentives to
proceed first in state court would also increase
the risk of the very piecemeal litigation that
the exhaustion requirement is designed to
reduce. Cf. *Rose*, 455 U.S., at 520, 102 S.Ct.
1198.  We have observed that "strict enforcement
of the exhaustion requirement will encourage
habeas petitioners to exhaust all of their
claims in state court and to present the federal
court with a single habeas petition." *Ibid*.  But

17

> were we to adopt respondent's construction of
> § 2244(d)(2), we would dilute the efficacy of
> the exhaustion requirement in achieving this
> objective.  Tolling the limitation period for a
> federal habeas petition that is dismissed
> without prejudice would thus create more
> opportunities for delay and piecemeal litigation
> without advancing the goals of comity and
> federalism that the exhaustion requirement
> serves.  We do not believe that Congress
> designed the statute in this manner.
>
> The Court of Appeals reasoned that its
> interpretation of the statute would further
> Congress' goal "to spur defendants to file their
> federal habeas petitions more quickly." 208
> F.3d, at 361.  But this view fails to account
> sufficiently for AEDPA's clear purpose to
> encourage litigants to pursue claims in state
> court prior to seeking federal collateral
> review. See, *e.g.*, §§ 2254(b), 2254(e)(2),
> 2264(a).  Section 2244(d)(1)'s limitation period
> and § 2244(d)(2)'s tolling provision, together
> with § 2254(b)'s exhaustion requirement,
> encourage litigants *first* to exhaust all state
> remedies and *then* to file their federal habeas
> petitions as soon as possible.

*Id.* at 179-181.

In *Duncan,* the Court did not address the question
whether the district court should toll the statute of
limitations on equitable grounds during the period the federal
habeas petition was pending. *Id.* at 181.

18

The one-year limitation in 28 U.S.C. § 2244 functions as a statute of limitations and is subject to equitable tolling. *Miller v. New Jersey State Dept. of Corrections*, 145 F.3d 616, 618 (3d Cir. 1998). Equitable tolling is proper only when the principles of equity make the rigid application of the limitations period unfair. *Id.* Equitable tolling may be appropriate if (1) the respondent has actively misled the petitioner, (2) the petitioner has in some extraordinary way been prevented from asserting his rights, or (3) the petitioner has timely asserted his rights mistakenly in the wrong forum. *Johnson v. Hendricks*, 314 F.3d 159, 162 (3d Cir. 2002). "In the final analysis, however, 'a statute of limitations should be tolled only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice.'" *Jones*, *supra,* 195 F.3d at 159 (quoting *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)).

In *Jones, supra,* 195 F.3d at 160, the petitioner filed two prior federal habeas petitions but he did not exhaust his state court remedies. The Third Circuit in *Jones* held that the petitioner in that case did not establish a basis for equitable

tolling of the time during which his second habeas petition was

pending in federal court. *Id.*   The court reasoned:

> Jones has made no showing that he "exercised
> reasonable diligence" in satisfying the
> exhaustion requirement in order to present his
> claims in a timely federal petition.  Instead,
> he has chosen on three occasions to file his
> claims in federal court without first pursuing
> state court remedies.  Although it appears that
> Jones was simply mistaken in his belief that he
> could obtain review in federal court without
> having presented his claims to the state courts,
> his misunderstanding of the exhaustion
> requirement is insufficient to excuse his
> failure to comply with the statute of
> limitations.

*Id.* (citation omitted).

Like the petitioner in *Jones,* the petitioner in the

instant case has not shown that he exercised reasonable

diligence in exhausting his state court remedies prior to filing

his first federal habeas petition.  Since pursuant to *Jones* a

misunderstanding of the exhaustion requirement is not sufficient

to justify equitable tolling, we conclude that the statute of

limitations should not be deemed to have been equitably tolled

during the time that the petitioner's first federal habeas

petition was pending.  Accordingly, the instant petition is

untimely.

We think that the conclusion that the statute of limitations in the instant case should not be deemed to have been equitably tolled during the time that the petitioner's first federal habeas petition was pending is dictated by *Jones, supra.* However, we note that a later Third Circuit case - *Crews v. Horn*, 360 F.3d 146 (3d Cir. 2004) - casts some doubt on whether the Third Circuit would continue to adhere to the result reached in *Jones.* In *Crews*, the Third Circuit held that district courts do not necessarily have to dismiss mixed habeas petitions (petitions containing both exhausted and unexhausted claims). *Id.* at 154. Rather, the court held that district courts have discretion to stay mixed habeas petitions pending exhaustion of state court remedies with regard to the unexhausted claims raised in the mixed petition. *Id.* at 154. The court further held that when an outright dismissal could jeopardize the timeliness of a collateral attack, a stay is the only appropriate course of action. *Id.*[1]  Although *Crews* casts some doubt on the continuing validity of *Jones, Crews* did not

---

[1] We note that the Eighth Circuit has refused to stay mixed habeas petitions. *See Rhines v. Weber*, 346 F.3d 799 (8th Cir. 2003)*, cert. granted*, 124 S.Ct. 2905 (2004).  Since the Supreme Court has granted certiorari in *Rhines*, the Eighth Circuit's refusal to stay mixed petitions and, by implication, the Third Circuits willingness to stay such petitions, is currently under review by the Supreme Court.

hold that a court should equitably toll the statute of limitations for the time a prior federal habeas petition was pending.  In fact, in *Crews* the court noted that it was not clear that if the court did not stay the habeas petition while the petitioner exhausted his state remedies the petitioner would later be entitled to tolling of the period his federal habeas petition was pending. *Id.* at 151.  Since *Crews* did not directly address the propriety of equitable tolling of the time period that a federal habeas petition is pending and did not overrule *Jones,* we follow *Jones.*

Based on the foregoing, it is recommended that the petition for a writ of habeas corpus be denied as untimely and that the case file be closed.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

DATED: March 16, 2005.