UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS NARDI,                          :
                                       :
        Petitioner,                    :CIVIL ACTION NO. 3:04-CV-0649
                                       :
            v.                         :(JUDGE CONABOY)
                                       :(Magistrate Judge Smyser)
WILLIAM STICKMAN, III,                 :
                                       :
        Respondent.                    :

---

### MEMORANDUM AND ORDER

Here we consider Magistrate Judge J. Andrew Smyser's Report and Recommendation concerning Petitioner Thomas Nardi's habeas corpus action filed pursuant to 28 U.S.C. § 2254, (Doc. 36). Petitioner, filed this action pro se on March 26, 2004. (Doc. 1.) He raises twenty-five grounds upon which he is being held unlawfully. (Id. ¶ 12.) The Magistrate Judge does not address the substantive merits of Petitioner's action because he recommends dismissal of the case based on his conclusion that Petitioner filed his action out of time. (Doc. 36 at 22.) The Magistrate Judge appointed counsel for the limited purpose of addressing the statute of limitations issues. (Doc. 21.) Therefore, Petitioner is not proceeding pro se regarding the issues currently under consideration.

Petitioner filed objections to the Magistrate Judge's Report and Recommendation. (Doc. 37.) Petitioner also filed a supporting brief, (Doc. 38), and Defendants filed a responsive brief, (Doc.

1

39).  When a Petitioner files objections to a magistrate judge's Report and Recommendation, the district judge makes a <u>de</u> <u>novo</u> review of those portions of the report or specified proposed findings or recommendations to which objection is made.  <u>See</u> <u>Cippolone v. Liggett Group, Inc.</u>, 822 F.2d 335, 340 (3d Cir. 1987), <u>cert. denied</u>, 484 U.S. 976 (1987).  Therefore, we will review the issues raised in Petitioner's objections <u>de</u> <u>novo</u>.  Although Petitioner enumerated ten specific objections, they fall into two categories: 1) the Magistrate Judge erred in establishing the date from which the applicable limitation period is calculated; and 2) the Magistrate Judge erred in finding that equitable tolling does not apply in this case.  (<u>See</u> Docs. 37, 38.)

     For the reasons that follow, we adopt the Magistrate Judge's Report and Recommendation with the modification discussed <u>infra</u>. We conclude that the instant action was not filed within one year of the date from which the limitation period is properly calculated and equitable tolling of Petitioner's first federal habeas action does not apply.  Therefore, we dismiss this habeas petition as untimely.

## I. Background

     The information presented in this section is derived primarily from the Petition, (Doc. 1), the Magistrate Judge's Report and Recommendation, (Doc. 36), and the Exhibits submitted with Respondents' Answer, (Doc. 12).  Because the background of the case

2

is procedurally complicated, we will use a timeline, beginning with Petitioner's conviction.[1]

| | |
|---|---|
| September 19, 1995 – | Petitioner convicted in Court of Common Pleas of Wayne County, Pennsylvania, of sexual abuse of children by pornography, sexual abuse of children by photographing or filming sexual acts, and corruption of minors. |
| October 26, 1995 – | Petitioner sentenced to a term of imprisonment of six to twelve years. |
| October 31, 1995 – | Petitioner files petition for post-conviction relief. |
| November 6, 1995 – | Petitioner files another petition for post-conviction relief. |
| May 26, 1996 – | Trial Court denies pending petitions, addressing the merits of six issues raised in Petitioner's "Motion for Post Conviction Relief" in its Opinion and Order and stating that Defendant's "Motion for Post-Conviction Collateral Relief" and "Supplemental Motion for Post-Conviction Collateral Relief" should have been filed pursuant to Pa. R. Crim. P. 1410.  The Trial Court stated it reviewed the motions nonetheless and found them completely devoid of any merit, concluding "[t]he Defendant's conduct in misclassifying his motions is yet another example of his obdurate and vexatious behavior.  It is this conduct that has repeatedly created delay and confusion in the record."  (Doc. 12 Ex. E. at 15.)   The Trial Court opinion states that counsel was appointed to represent the Defendant for purposes of |

---

[1]  This is not a complete procedural history.  Some of Petitioner's filings do not bear on our analysis and we are unable to track their disposition.

|  | his post-conviction relief.[2] (_Id._ Ex. E. at 1.) |
|---|---|
| Date unknown – | Petitioner files timely appeal of Trial Court decision in Pennsylvania Superior Court. |
| February 21, 1997 – | Pennsylvania Superior Court affirms Trial Court decision, classifying his appeal as follows: "Appellant appeals from the Order of the Wayne County Court of Common Pleas denying his petition for collateral relief under the Post Conviction Relief Act ("PCRA")." (Doc. 12 Ex. E.) |
| May 5, 1997 – | Petitioner files a Petition for Leave to File a Petition for Allowance of Appeal Nunc Prop Tunc with the Supreme Court of Pennsylvania. The last day to file a timely appeal was March 21, 1997. |
| October 7, 1997 – | Pennsylvania Supreme Court denies Petition for Leave to File a Petition for Allowance of Appeal Nunc Pro Tunc. |
| December 30, 1997 – | Petitioner files 28 U.S.C. § 2254 Petition in United States District Court for the Middle District of Pennsylvania which is assigned to the Honorable Richard P. Conaboy. Petitioner identifies twenty-one grounds for relief. |
| April 24, 1998 – | Magistrate Judge issues a Report and Recommendation recommending dismissal without prejudice due to Petitioner's failure to exhaust state court remedies for some of his claims. |

---

[2]   First, the Trial Court seems to refer to three motions but we cannot discern precisely what was filed when from the current record. Second, the record is not completely clear on who represented Petitioner and when the representation took place. In the Pennsylvania Superior Court Opinion of August 18, 1999, the court states that Petitioner filed his October 31, 1995, and November 6, 1995, PCRA petitions pro se, in response to which the Trial Court removed trial counsel and appointed new counsel to represent the defendant. (Doc. 12 Ex. V at 1.)

| | |
|---|---|
| May 8, 1998 – | Petitioner files PCRA petition in Trial Court raising twenty-one grounds. |
| July 14, 1998 – | Trial Court dismisses PCRA petition, characterizing filing as Petitioner's second PCRA petition. |
| Date Unknown – | Petitioner files appeal of Trial Court dismissal to Pennsylvania Superior Court. |
| November 7, 1998 – | Middle District Court, Judge Conaboy, adopts Magistrate Judge's Report and Recommendation, dismissing Petitioner's § 2254 Petition without prejudice because it contained both exhausted and unexhausted claims. |
| August 18, 1999 – | Pennsylvania Superior Court vacates Trial Court's PCRA Order of July 14, 1998, and remands case.  The Superior Court determines the July 14, 1998, PCRA Petition was Petitioner's first rather than second petition.[3]  Citing intervening |

---

[3]  The Superior Court gave the following explanation for why it concluded the Petition under consideration to be Petitioner's first:

> Appellant filed a *pro se* motion on October 31, 1995, just five (5) days following his judgment of sentence, and then filed a supplemental motion six (6) days later, entitling them both as PCRA petitions. However, the October 31st motion had subparts entitled "Motion to Vacate or Modify Sentence" and "Motion for Arrest of Judgement [sic]."  These motions, particularly the first motion, were in actuality post-sentence motions and should have been filed pursuant to Pa. R. Crim. P. 1410.  Because Appellant alleged in his *pro se* motions that trial counsel prejudiced him and the sentencing court erred, the Trial Court removed trial counsel and appointed Appellant new counsel on November 6, 1995.  The Trial Court conducted a hearing on Appellant's motions on April 25, 1996 at which time previous trial

5

Pennsylvania law which established that a defendant was entitled to counsel to aid him in his first petition seeking post conviction collateral relief regardless of the timeliness of the claim, the Superior Court remands the case for appointment of counsel.

July 17, 2001 –    Trial court issues Opinion, Order, Notice of Intention to Dismiss regarding remanded PCRA petition.  Trial Court found PCRA untimely and no exceptions applied.  Court also reviewed merits of each asserted ground for relief and did not find merit in any.

August 2, 2001 –    PCRA Court issues Order denying PCRA petition.

August 27, 2001 –    Petitioner appeals PCRA petition denial to Superior Court pro se.

June 19, 2002 –    Petitioner files another PCRA petition.

June 27, 2002 –    PCRA Court dismisses June 19, 2002, petition.

Date unknown –    Petitioner appeals June 27th denial to Superior Court.

April 10, 2003 –    Superior Court affirms denial of both

---

counsel and Appellant testified.  The Trial Court held its decision on the matter until May 20, 1996 when it denied and dismissed Appellant's **post-sentence motions**.  This Court affirmed Appellant's judgment of sentence, with an order similar to that used in the affirmance of any judgment of sentence, but also stated in its memorandum opinion that Appellant was appealing from an order denying PCRA relief.

(Doc. 12 Ex. V. at 4-5.)  In a footnote, the Superior Court further stated: "We are cognizant of the fact that the previous tribunal of the Court did state that Appellant did not take a direct appeal." (Id. at 5 n.2.)

6

|  | pending PCRA petitions. Court does not decide timeliness issue of "first" PCRA petitioin (May 8,1998), dismisses on basis that Appellant's brief is not understandable and does not "even minimally" conform to Pa. R.A.P. 2111.[4] |
|---|---|
| May 8, 2003 – | Petitioner files Notice of Appeal of Superior Court's April 10, 2003, Order in Supreme Court of Pennsylvania. |
| February 23, 2004 – | Pennsylvania Supreme Court denies Petition for Allowance of Appeal. |
| March 26, 2004 – | Petitioner files 28 U.S.C. 2254 Petition in U.S. District Court for the Middle District of Pennsylvania. |

### III. Discussion

As noted above, Petitioner enumerated ten specific objections to the Magistrate Judge's Report and Recommendation which fall into two categories: 1) the Magistrate Judge erred in establishing the

---

[4] Regarding the timeliness of the "first" PCRA, the Superior Court stated that it was unable to determine wether it was timely or not.

> If the Supreme Court's order denying *nunc pro tunc* relief, dated October 7, 1997 was denial of allocatur following this Court's affirming judgment of sentence, it would have been a final order for the purpose of calculating the timeliness of a PCRA petition, and the petition would have been timely filed.  If the Supreme Court order was a different kind of order, then the final order, from which appellant had one year to file for PCRA relief, was the Court's affirmance of judgment of sentence dated February 21, 1997. Appellant, who filed his petition on April 28, 1998, would therefore be more than two months late.

(Doc. 12 Ex. II at 4 (citations omitted).)

date from which the limitation period is calculated; and 2) the Magistrate Judge erred in finding that equitable tolling does not apply in this case.  (See Docs. 37, 38.)

We conclude the instant petition is not timely filed because it was not filed within the one year limitation period required by 28 U.S.C. § 2244(d): the Magistrate Judge correctly determined the date from which the limitation period is calculated; the instant action was not filed within one year of that date; and equitable tolling does not apply to Petitioner's first federal habeas filing.

## A.   Date from which the Limitation Period is Calculated

Petitioner argues the Magistrate Judge erred in establishing March 22, 1997, as the date from which to calculate the applicable one-year limitation period found in 28 U.S.C. § 2244(d) and, therefore, he erred in his conclusion that the instant action is not timely filed.  (Doc. 38 at 4-8.)

Section 2244(d), a provision of the Antiterrorism and Effective Death Penalty Act ("AEDPA") which governs the applicable limitations period for a petition filed pursuant to 28 U.S.C. § 2254, provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of -
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to

8

> filing an application created by State Action
> in violation of the Constitution or laws of
> the United States is removed, if the
> applicant was prevented from filing by such
> State action;
> (C) the date on which the constitutional
> right asserted was initially recognized by
> the Supreme Court, if the right has been
> newly recognized by the Supreme Court and
> made retroactively applicable to cases on
> collateral review; or
> (D) the date on which the factual predicate
> of the claim or claims presented could have
> been discovered through the exercise of due
> diligence.
> (2) The time during which a properly filed
> application for State post-conviction or
> other collateral review with respect to the
> pertinent judgment or claim is pending shall
> not be counted toward any period of
> limitation under this subsection.

28 U.S.C. § 2244(d).

Here, Petitioner maintains that the instant action is timely filed because his conviction did not become final, and thus the statute of limitations did not begin to run, until October 7, 1997 – the date the Pennsylvania Supreme Court denied his Petition for Leave to File a Petition for Allowance of Appeal Nunc Pro Tunc. (Doc. 38 at 4-8.)  The significance of the later date is that, if the limitations period is tolled for the period when Petitioner's May 8, 1998, PCRA petition was pending (from May 8, 1998 to February 23, 2004), the instant action would be timely filed.

To apply § 2244(d), ordinarily we must first determine the date upon which Petitioner's conviction became final within the meaning of the provision.  As the Magistrate Judge correctly noted,

9

establishing this date is complicated here given the procedural history.  (See Doc. 36 at 9.)

The petitioner contends that he did not file direct appeal.  If the filings of the petitioner on October 31, 1995 and November 6, 1995 are treated as petitions for collateral relief (rather than post-sentence motions), then the petitioner's sentence became final on November 25, 1995.  The petitioner was sentenced on October 26, 1995. He had 30 days from the date to file a direct appeal to the Pennsylvania Superior Court. Assuming that he did not file a direct appeal, his conviction became final on November 25, 1995.

On the other hand, if, as the Pennsylvania Superior Court did in its Memorandum and Order of August 18, 1999, we treat the filings of the petitioner on October 31, 1995 and November 6, 1995 as post-sentence motions (rather than petitions for collateral relief) and the appeal of the denial of those motions are treated as a direct appeal, then the petitioner's conviction became final on March 22, 1997. The Pennsylvania Superior Court affirmed the petitioner's conviction and sentence on February 21, 1997.  The petitioner had thirty days to appeal to the Pennsylvania Supreme Court.  The petitioner did not file a timely appeal to the Pennsylvania Supreme Court. Therefore, the petitioner's conviction became final on March 22, 1997.

Pursuant fo 28 U.S.C. § 2244(d)(2), the statute of limitations is tolled during that time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.

Although it is unclear whether the petitioner's conviction became final on November 25, 1995 or March 22, 1997, that determination is not necessary in the instant case.  Assuming arguendo that the petitioner did not file a direct appeal and therefore, his conviction became final on November 25,

> 1995, the statute of limitations was
> nevertheless tolled until March 22, 1997.
> That is so because if the petitioner did not
> file a direct appal, then the filings of the
> petitioner on October 31, 1995 and November
> 6, 1995 are treated as motions for collateral
> relief and the statute of limitations is
> tolled during the time those motions were
> pending.
>
> The statute of limitations began to run
> (if there was a direct appeal) or the period
> of tolling of the statute ended (if there was
> no direct appeal) on March 22, 1997.[5]  Absent
> further tolling, the statute expired one year
> later on March 21, 1998.

(Doc. 36 at 9-11.)

The Magistrate Judge went on to carefully analyze whether the current action was filed outside the one-year limitations period. He concluded that the statute was properly tolled for the period when Petitioner's May 8, 1998, PCRA petition was pending: "because the Pennsylvania Superior Court did not dismiss the petitioner's PCRA petition of May 8, 1998 as untimely, that petition was properly filed within the meaning of § 2244(d)(2)." (Doc. 36 at 14.)  Thus, the limitation period would be properly tolled from May 8, 1998, to February 23, 2004, when the Pennsylvania Supreme Court denied the Petition for Allowance of Appeal on the May 8, 1998, PCRA petition.  (_Id._ at 15.)  However, the fact that the limitation period would be properly tolled for this time does not render the instant petition timely because, unless the statute was also tolled

---

[5] To encompass both possibilities, in this document we refer to March 22, 1997, as "the date from which the limitation period is calculated" or similar terms.

for the period during which Petitioner's first federal habeas action was pending, the statute would have expired on March 21, 1998 - *before* Petitioner filed the May 8, 1998, PCRA petition.

The Magistrate Judge then considered whether the statute was tolled during the pendency of Petitioner's first federal habeas filing.  Recognizing that "[a] petitioner can seek tolling in two ways: (i) statutory tolling under § 2244(d)(2), or (ii) equitable tolling[,] <u>Jones v. Morton</u>, 195 F.3d 153, 158 (3d Cir. 1999)[,]" he concluded that neither applied in this case.

Regarding statutory tolling, the Magistrate Judge found that Petitioner is not entitled to statutory tolling for the period during which his first habeas petition was pending.  (Doc. 36 at 16-18.)  In <u>Duncan v. Walker</u>, 533 U.S. 167, 181-82 (2001), the United States Supreme Court held that a federal habeas petition is not an "application for State post-conviction or other collateral review" within the meaning of 28 U.S.C. § 2244(d)(2).  Based on this authority, Petitioner accepts the Magistrate Judge's conclusion that he is not entitled to statutory tolling for the period his first federal habeas action was pending.  (Doc. 38 at 6.)

Because statutory tolling is not applicable for the period the first habeas petition was pending - from December 30, 1997 to November 7, 1998 - his petition is not timely filed if March 22, 1997, is the proper date from which to calculate the expiration of

12

the limitation period.

For the reasons discussed in the Magistrate Judge's Report and Recommendation, we agree with his determination that March 22, 1997, is the date from which to calculate the expiration of the limitation period.  We also concur that statutory tolling does not apply for the period Petitioner's first 28 U.S.C. § 2254 petition was pending in this Court.  Therefore, absent equitable tolling of the period when Petitioner's first federal habeas action was pending, the instant petition is not timely filed because the limitation period expired on March 21, 1998.

For the reasons discussed _infra_ in Section IIIB, we conclude that equitable tolling does not apply to Petitioner's first federal habeas filing.  Therefore, we need make no finding regarding whether the statute would be tolled for the period when Petitioner's May 8, 1998, PCRA petition was pending as it was filed beyond the one-year limitation period.  "The section 2244 tolling provision can only 'pause a clock that has not yet fully run'; they cannot 'restart the clock at zero.'"  _Fried v. Horn_, No. Civ. A. 02-8314, 2003 WL 23142179, at *3 (E.D. Pa. Aug. 11, 2003) (quoting _Blasi v. Commonwealth of Pa._, 30 F. Supp. 2d 481, 485 (M.D. Pa. 1998)).

Before discussing the applicability of equitable tolling, we will address Petitioner's contention that the statute of limitations did not begin to run until October 7, 1997.  As noted

13

above, Petitioner arrives at this date because he concludes that his state court conviction became final on October 7, 1997, the date on which the Pennsylvania Supreme Court denied his Petition for Leave to File a Petition for Allowance of Appeal Nunc Pro Tunc.

Citing the Pennsylvania Superior Court's decision of August 18, 1999, Petitioner's argument begins with his assertion that the Pennsylvania Superior Court "necessarily" found that the PCRA petition filed on May 8, 1998, was timely because it remanded it back to the PCRA court.  (Doc. 38 at 7-8.)  Petitioner also maintains "[t]he April 10, 2003 [Superior Court] decision, in its discussion of whether the May 8, 1998 Petition was timely, set forth the basis for a finding of timeliness: that the Supreme Court's October 7, 1997 order denying nunc pro tunc relief 'was denial of allocatur following this Court's affirming judgment of sentence,' and thus 'it would have been a final order . . . .'" (Doc. 38 at 8 (quoting <u>Commonwealth v. Nardi</u>, No. 2338 EDA 2002, slip op. at 4 (Pa. Super. April 10, 2003).)  Petitioner reasons that because the Magistrate Judge's Report "concluded the May 8, 1998 Petition should be treated as timely because the Pennsylvania Superior Court did so, then the Supreme Court's October 7, 1997 order must have been 'a final order.'" (<u>Id.</u>)

We are not persuaded by this reasoning in that Petitioner makes assumptions not supported by the record.  First, regarding the August 18, 1999, Superior Court decision, as Respondent notes,

the decision to remand was not based on timeliness considerations, it was based on the fact that the Superior Court considered this filing Petitioner's first PCRA petition and he was entitled to counsel regardless of the merits or timeliness of the petition. (See Doc. 39 at 4.)

Second, regarding the language quoted from the Pennsylvania Superior Court's Order of April 10, 2003, Petitioner leaves out a few very important words.  The Superior Court did not say that the Supreme Court's October 7, 1997, Order *was* definitively a denial of allocatur, the Superior Court said "*[i]f* the Supreme Court's order . . . was denial of allocatur following this Court's affirming judgment of sentence, it **would have been** a final order for the purpose of calculating the timeliness of a PCRA petition." Commonwealth v. Nardi, No. 2338 EDA 2002, slip op. at 4 (Pa. Super. April 10, 2003) (emphasis added).  The Superior Court went on to state that if it is anything other than a denial of allocatur, then it is not a "final order" for the purpose of determining when the statute of limitation began to run.  Id.  The Superior Court did not make a determination on this issue because the petition failed on other grounds.  Id.

Although the Magistrate Judge recommends that we should not treat the May 8, 1998, PCRA petition as untimely because the Pennsylvania Superior Court did not, as noted supra, we make no finding on this issue.  However, we will briefly elaborate why we

15

do not accept Petitioner's characterization of the Pennsylvania Supreme Court's October 7, 1997, Order.

To accept Petitioner's date would be allowing procedural confusion to work in Petitioner's favor and would also run counter to the rationale upon which the limitations period is based.  No Pennsylvania Court has ever determined that Petitioner timely filed an appeal to the Pennsylvania Supreme Court from the Superior Court's February 21, 1997, affirmance of the Wayne County Court of Common Pleas denial of Petitioner's October 31, 1995, and November 6, 1995, filings.  Petitioner himself recognized that his time for filing an appeal had passed when he sought _nunc_ _pro_ _tunc_ permission to file a petition of appeal on May 5, 1997.

Further, for us to consider the Pennsylvania Supreme Court's October 7, 1997, Order a timely appeal would run counter to the language of the very direct Order: "And now, this 7th day of October, 1997, the Petition for Leave to File a Petition for Allowance of Appeal Nunc Pro Tunc is denied."  (_See_ Doc. 12 Ex. B.) This Order says that Petitioner was not allowed to file an appeal to the Pennsylvania Supreme Court regarding the Superior Court's February 21, 1997, decision.  By its plain language, the Order means that Petitioner _did not file_ an appeal of the Superior Court's decision.  We agree with Respondent that to consider the Pennsylvania Supreme Court's Order a final order for the purpose of establishing the date when the § 2244(d) limitations period begins

16

to run would mean that a <u>nunc</u> <u>pro</u> <u>tunc</u> filing seeking permission to file an appeal could extend the period for years if the date the filing is denied is considered "the date on which the judgment became final." 28 U.S.C. § 2244(d)(1)(A).  We cannot sanction an interpretation that may lead to this result as it would completely undermine § 2244(d)'s establishment of a limitations period to "further the interest in finality of state court judgments by ensuring rapid federal review of constitutional challenges." <u>Crews v. Horn</u>, 360 F.3d 146, 150 (3d Cir. 2004) (citing <u>Woodford v. Garceau</u>, 538 U.S. 202 (2003); <u>Duncan v. Walker</u>, 533 U.S. 167, 179 (2001)).  Therefore, we reject Petitioner's argument.[6]

## B.    *Equitable Tolling*

Petitioner argues the Magistrate Judge erred in his conclusion that equitable tolling is not appropriately applied to the period during which his first federal habeas petition was pending.  (Doc. 38 at 9-12.)

The one-year limitation in 28 U.S.C. § 2244 functions as a

---

[6]  We also note that Pennsylvania Courts have pointed to Petitioner's conduct in recognizing the procedural confusion.  In its April 10, 2003, Memorandum, the Pennsylvania Superior Court stated "Appellant's continuing and overlapping *pro se* efforts have resulted in further confusion." <u>Commonwealth v. Nardi</u>, No. 2338 EDA 2002, slip op. at 4 (Pa. Super. Apr. 10, 2003).  The Wayne County Court of Common Pleas did not find this kind of behavior innocent: "The Defendant's conduct in misclassifying his motions is yet another example of his obdurate and vexatious behavior.  It is this conduct that has repeatedly created delay and confusion in the record." <u>Commonwealth v. Nardi</u>, No. 151-1995, slip op. at 15 (Pa. Ct. of Common Pleas, Wayne County, May 20, 1996).

statute of limitation and is subject to equitable tolling.  <u>Miller v. New Jersey State Dep't of Corrections</u>, 145 F.3d 616, 618 (3d Cir. 1998).  <u>Miller</u> provided guidance to the district court as to when equitable tolling may be appropriate:

> [E]quitable tolling is proper only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she has exercised reasonable diligence in investigating and bringing the claims.  Mere excusable neglect is not sufficient.

<u>Miller</u>, 145 F.3d 618-19.  The Third Circuit Court of Appeals has since held that equitable tolling may be appropriate in three situations: 1) the respondent has actively misled the petitioner; 2) the petitioner has been prevented from asserting his rights in some extraordinary way; or 3) the petitioner has timely asserted his rights mistakenly in the wrong forum.  <u>Johnson v. Hendricks</u>, 314 F.3d 159, 162 (3d Cir. 2002); <u>Jones v. Morton</u>, 195 F.3d 153, 159 (1999).  <u>Jones</u> concluded: "In the final analysis, . . . 'a statute of limitation should be tolled only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice.'"  <u>Id.</u> at 159 (quoting <u>United States v. Midgley</u>, 142 F.3d 174, 179 (3d Cir. 1998)).

Here Petitioner objects to the Magistrate Judge's finding that Petitioner is not entitled to equitable tolling because he did not exercise reasonable diligence.  (Doc. 38 at 11.)  Rather,

Petitioner argues that, if he has a timeliness problem at all, equitable tolling is appropriate because he has been prevented in some extraordinary way from asserting his rights, he timely asserted his rights in the wrong forum and he has diligently pursued his claims.  (Id. at 9-12.)

Although not clear from his brief, Petitioner seems to argue that the extraordinary circumstance is the fact that Duncan was decided after he filed his first petition.  (Doc. 38 at 11-12.) Regarding diligence, Petitioner argues that he diligently pursued his claims by filing a petition for habeas corpus in December 1997. (Id. at 11.)  Additionally, Petitioner cites the approval of equitable tolling found in Justice Stevens' concurring opinion in Duncan as another basis to apply the principle here.  (Id. at 10.)

First, we disagree that the timing of Petitioner's earlier habeas filing relative to when Duncan was decided presents an extraordinary circumstance in terms of equitable tolling.  Although Petitioner filed his first federal habeas petition in 1997 and Duncan was not decided until 2001, in 1997 no court had found that the running of the limitations period was tolled during the time a properly filed federal habeas petition was pending in federal court.  Jones, 195 F.3d at 159 (citing Babcock v. Duncan, No. C97-2740, 1997 WL724450 at *2 (N.D. Cal. Nov. 12 1997)).  Therefore, Petitioner would have had no well-founded expectation that the time during which his first habeas petition was filed would be tolled.

19

Second, although Petitioner has diligently filed documents in State and federal court, mere filing does not equate with the diligence contemplated for equitable tolling purposes.  See Jones, 195 F.3d at 160.

Finally, regarding Petitioner's reliance on the Duncan concurrence, we conclude that a recent Supreme Court opinion, general equity principles, and the rationale behind the Duncan decision and the § 2244(d) limitation provision caution against affording the opinion much weight.

Duncan held the limitation period was not statutorily tolled during the pendency of a previously filed federal habeas petition, but the Court did not discuss whether the principles of equitable tolling applied.  However, in his concurring opinion, in which Justice Souter joined, Justice Stevens opined that equitable tolling of the period during which a federal habeas petition is pending may be appropriate in certain circumstances.  Duncan, 533 U.S. at 183.  One such situation noted is for "petitioners whose timely filed habeas petitions remain pending in district court past the limitations period, only to be dismissed after the court belatedly realizes that one or more claims have not been exhausted."  Id.

Further support for equitable tolling might be found in the Third Circuit's decision in Crews v. Horn, 360 F.3d 146 (3d Cir. 2004), where the court addressed the propriety of staying mixed

habeas petitions.   The court held that district courts have the
authority to stay mixed petitions when outright dismissal could
jeopardize timeliness of a petition under § 2244(d).

While Justice Stevens' _Duncan_ concurrence and _Crews_ might be
considered favorable to Petitioner's position, a recent United
States Supreme Court decision indicates otherwise.   In _Rhines v._
_Weber_, 125 S. Ct. 1528, 1534-35 (2005), a decision handed down on
March 30, 2005, the Court held that district courts have the
authority to stay mixed habeas petitions to allow petitioners to
present unexhausted claims in state court in the first instance.
However, the Court also cautioned that too frequent use of stay and
abeyance has the potential to undermine the purposes of the
limitations period.   "Staying a federal habeas petition frustrates
AEDPA's objective of encouraging finality by allowing a petitioner
to delay the resolution of federal proceedings.   It also undermines
AEDPA's goal of streamlining federal habeas proceedings by
decreasing a petitioner's incentive to exhaust all his claims in
state court prior to filing his federal claims."   _Id._ at 1534
(citing _Cf._ _Duncan_, 533 U.S. at 180 ("[D]iminution of statutory
incentives to proceed first in state court would . . . increase the
risk of the very piecemeal litigation that the exhaustion
requirement is designed to reduce.")).   _Rhines_ continued:

> For these reasons, stay and abeyance should
> be available only in limited circumstances.
> Because granting a stay effectively excuses a
> petitioner's failure to present his claims

> first to state courts, stay and abeyance is
> only appropriate when the district court
> determines there was good cause for the
> petitioner's failure to exhaust his claims
> first in state court.  Moreover, even if a
> petitioner had good cause for that failure,
> the district court would abuse its discretion
> if it were to grant him a stay when his
> unexhausted claims are plainly meritless.

Id. at 1535.  Rhines also reinforced the vitality of earlier

Supreme Court dicta regarding exhaustion: "[The scheme found in 28

U.S.C. § 2244(d)(2)] reinforces the importance of Lundy's 'simple

and clear instructions to potential litigants: before you bring any

claims to federal court, be sure that you first have taken each one

to state court."  Id. at 1534 (citing Rose v. Lundy, 455 U.S. 509,

529 (1982)).

   Although this is a situation where the first habeas petition

was dismissed for failure to exhaust after the statutory period

ran, we conclude Rhines suggests that equitable tolling of the time

during which an earlier federal mixed habeas petition was pending

should be applied sparingly.  Appropriate application would be

where the petition would meet the criteria for a stay if the

procedure had been available at the time of the decision - good

cause for the failure to exhaust and meritorious claims.  See

Rhines, 1525 S. Ct. at 1535.  The propriety of this approach is

supported by the relationship between tolling of the limitations

period and allowing a stay procedure indicated by Rhines citation

to Duncan, id. at 1534-35, as well as the general rationale behind

the limitation period.

Here we conclude Petitioner has not shown good cause for his failure to exhaust some of the claims raised in his first habeas petition.  In fact, he has provided no reason for his failure to pursue state court remedies on the unexhausted claims prior to filing his first habeas petition other than his assertion that he mistakenly asserted his claims in the wrong forum.  This mistaken belief - which does not explain why he raised some claims in state court and not others - is insufficient to establish good cause.  In Jones, 195 F.3d at 160, the Third Circuit Court of Appeals concluded that a misunderstanding of the exhaustion requirement was insufficient to excuse the petitioner's failure to comply with the statute of limitations for the purposes of equitable tolling. Further, to allow a simple mistaken belief to serve as good cause would render the requirement meaningless.  This is particularly so in light of the fact that here the belief was formed at a time when the Lundy language quoted supra demonstrates the law was clear that claims made in a federal habeas petition must first be raised in state court.[7]

---

[7]   We recognize Petitioner presents his assertions supporting equitable tolling in terms of traditional considerations rather than "good cause."  However, the traditional considerations set out in Hendricks and Jones, supra, can be seen as indicia of "good cause."  For the reasons discussed in the text, Petitioner's assertions do not support a finding that equitable tolling is appropriate here.

23

For all of the above reasons, we conclude that equitable tolling is not proper in this case.  It follows from this conclusion that the AEDPA limitations period ran on March 21, 1998.  Therefore, Petitioner's current action is not timely filed.  Further, as discussed in Section IIIA, because equitable tolling does not apply and Petitioner's May 8, 1998, PCRA petition was filed beyond the limitations period, we need not decide whether the limitations period would have been tolled during the pendency of that petition.  We do not adopt the Magistrate Judge's finding on this issue.

## IV.  Conclusion

We dismiss the instant petition as untimely for the reasons discussed above.  We adopt the Magistrate Judge's Report and Recommendation, (Doc. 36), except that we make no finding regarding the tolling of the limitations period during the pendency of Petitioner's PCRA petition filed on May 8, 1998.  An appropriate Order follows.

<u>S/Richard P. Conaboy</u>
RICHARD P. CONABOY
United States District Judge

DATED: _July 21, 2005_____

24

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS NARDI,                      :
                                   :
        Petitioner,                :CIVIL ACTION NO. 3:04-CV-0649
                                   :
            v.                     :(JUDGE CONABOY)
                                   :(Magistrate Judge Smyser)
WILLIAM STICKMAN, III,             :
                                   :
        Respondent.                :

---

## ORDER

AND NOW, THIS 21 st  DAY OF JULY 2005, FOR THE REASONS DISCUSSED IN THE ACCOMPANYING MEMORANDUM, THE FOLLOWING ORDER IS ENTERED:

1.    The Magistrate Judge's Report and Recommendation , (Doc. 36), is ADOPTED with the modification discussed in the accompanying Memorandum;

2.    Petitioner's habeas corpus action filed pursuant to 28 U.S.C. § 2254, (Doc. 1), is DISMISSED;

3.    The Clerk of Court is directed to close this case.


                        S/Richard P. Conaboy
                        RICHARD P. CONABOY
                        United States District Judge